770 So.2d 284 (2000)
Demetrio J. PEREZ, Appellant,
v.
Daniel H. MARTI, et al., Appellees.
Nos. 3D00-3120, 3D00-2441.
District Court of Appeal of Florida, Third District.
November 3, 2000.
Rehearing Denied November 6, 2000.
*285 Coffey, Diaz & O'Naghten, and Kendall Coffey, and Mark Journey, and Carlos L. De Zayas, Miami; Sale & Kuehne, and Benedict P. Kuehne, Miami; Nelson Rodriguez-Varela, Miami, for appellant.
Wampler, Buchanan & Breen, and James J. Breen, and Joseph R. Buchanan, Miami; Geller, Geller, Beskin, Shienvold, Fisher & Garfinkel, and Joseph S. Geller, and Peggy Fisher (Hollywood); Lott & Friedland, Coral Gables, and Daniel H. Marti, Miami, for appellees.
Before SCHWARTZ, C.J., and GERSTEN, and GREEN, JJ.
*286 PER CURIAM.
We affirm finding substantial competent evidence supports the detailed findings and conclusions of law in the final judgment entered by Judge Levenson. See Shaw v. Shaw, 334 So.2d 13 (Fla.1976). Set forth below is Judge Levenson's comprehensive and well-reasoned opinion, which we adopt as the opinion of this court, and with which we entirely agree:
This cause came before this Court for a full and final hearing on a Complaint for Declaratory Relief, pursuant to Chapter 86, Florida Statutes, seeking to declare Demetrio J. Perez not qualified as a candidate for District 7 of the Dade County School Board, due to his failure to establish residence within District 7 by the close of the qualification period of July 21, 2000, at noon.
An Amended Complaint was filed in this case after the September election and prior to the November election in which Defendant Perez again appears on the ballot in a run-off election for the school board seat in District 7. The Amended Complaint adds the name of Plaintiff Cobo, who finished third in the initial September election.
A brief history of this case shows that prior to the September balloting, an emergency hearing was held before another judge, who entered a temporary restraining order removing Perez from the ballot. The Third District Court of Appeals remanded the case to the trial court with instructions to dissolve the injunction. At that point, the original judge granted a motion for recusal.
This Court heard argument from defendant for judgment on the pleadings or summary judgment. This court denied that motion by written order on October 25, 2000, finding inter alia that a full evidentiary hearing of this matter had not been had. Following a four day period for the parties to conduct limited discovery including permission for plaintiffs to enter the Perez family land in the Redlands to video tape and photograph the area, a full evidentiary hearing was held on October 30, 2000.
This Court heard seven hours of testimony, viewed a video tape and photographs, examined documents, heard argument of counsel, reviewed the court file, and being otherwise advised in the premises, now enters a final judgment granting declaratory relief to Plaintiffs, and finding that Defendant Perez did not qualify in the September election and does not qualify in the November election. This judgment is based on the following.
Findings of Fact
Defendant Demetrio J. Perez testified that until July 17, 2000, his residence had been at 1120 S.W. 95th Avenue, Miami, Florida, 33174, which is his mother's home. He also resided at 1541 Brickell Avenue, Apartment C-1606, The Palace Condominiums, in a condo owned by his father, Demetrio Perez, Jr. (The Defendant uses the middle initial `J', which distinguishes him from his father.) This address appears on his current driver's license. Perez further testified that he is a law student at the University of Miami School of Law, has just finished an unpaid internship in the office of the Dade County State Attorney, is a "$10 per year administrative aide to his father who is a Dade County School Board Member, and that his father "gives him money", for which he works at the Lincoln-Marti Schools sometimes.
Perez stated that during the weekend preceding the week of qualifying for school board, he decided to run for the school board from District 7. He further stated that at the time of this decision, he was not yet a resident of the district, but decided to get an official residence.
On Monday, July 17, 2000, he went to the Elections Office and picked up the packet of papers for qualifying. He also changed his voter registration to an address of 10011 S.W. 80th Avenue, and *287 asked for a certificate of registration, showing that he was a registered voter at that address. When asked what made this his legal address, he stated that he had slept there on occasion as well as the address of his mother and his father's condo. When asked whose house this was, he explained it was the home of a family friend who he considered his surrogate grandmother. However, he didn't know the last name of that woman, and only learned it through the lawsuit. Two other individuals also inhabit that residence. He does not know their last names or their relationship to the owner. He was unable to state how many bedrooms were within the house answering that he didn't feel it necessary to inspect the premises.
On Tuesday, July 18th, Perez filled out all of the papers necessary to qualify for office, including the Loyalty Oath, the Appointment of Campaign Treasurer, and the financial disclosure form. He stated that his address was 10011 S.W. 80th Avenue, Miami, Florida, 33156.
He next related that after sleeping at the 80th Avenue address on Sunday, Monday, and Tuesday, he discovered that this address was not in District 7. On Wednesday, July 19th, he called his father to help him with this problem. They settled on a farm owned by his father, which was within the district. The address of this land is 17835 S.W. 254th Street.
Perez claimed that his father would deliver a bed there for his use, that he told his father and his girlfriend that he intended to make this his permanent residence and that the structure on the land was suitable for this purpose. He stated that he took some clothes, his laptop computer, a coolpack with his medication and moved there. He further outlined his movements on Wednesday, Thursday and Friday which included sleeping at the farm for a period of two hours on Thursday A.M. from 2 A.M. to 4 A.M, after earlier driving to his girlfriend's home in West Kendall, then to Cocowalk for a three hour movie, then back to West Kendall, and then back to the farm to unpack and sleep. On Friday A.M., he slept there or stayed there only from 1 A.M. until 4 A.M. This comprised approximately five hours at the farm prior to the qualifying time of noon on Friday, July 21.
The uncontroverted testimony reflected in the video tape and photographs show that the farm property is approached by an unlighted path through the ten acre farm from the road. The path leads to a small structure which is known as a "Ted's Shed". This prefabricated structure is made of metal and consists of one room, about 9 feet by 11 feet. There are finished walls, floor, and ceiling, and an electric ceiling, and a telephone. There is no bathroom or kitchen or cooking facilities. There are two outbuildings containing toilets and a wash basin. They are some minutes form the shed and there is no lighting between these structures. The only shower is an outdoor shower head, with no enclosure. There is no hot water on the premises. An official from the Dade County Planning and Zoning Department testified that no improved structures have been permitted on the land. Neither had there ever been issued a certificate of occupancy or other certificate for human habitation, nor is there any septic tank or sewer on the property. He further stated that the structure met none of the minimal standards for human habitation.
The defendant stated that he had no problems transporting his boxes of clothes down the long path from the road in complete darkness at 2 A.M. on Thursday.
It is also uncontroverted that the defendant never gave the address at the farm to anyone as his legal address until the emergency hearing in this case after the filing of this lawsuit. The defendant *288 stated that, although he knew the address on 80th Avenue was not in the district and had the qualifying papers available to change that address before he filed them, he did not do so on Wednesday, even though he had recreational time available to drive around the county and see a three hour movie. He did not revise his papers on Thursday when he again spent the evening at his girlfriend's residence. He did not change the address on his papers on Friday, when he spent time at his mother's home and at Lincoln-Marti School where he reviewed the papers before going to the election office with his father. All of this was testified to by the defendant.
He never changed the address on his papers as he stood in line with his father for "over five minutes" before handing in the qualifying papers plus the certificate of voter registration showing the 80th Avenue address.
Perez next testified that he didn't notice the "wrong address" until the receiving clerk was reviewing the papers, and although he was looking at the papers upside down as they were held by the clerk, he then noticed that he had maintained the 80th Avenue address. When asked why he didn't correct the address right then and there, he stated that the clerk told him this could not be done and he would have to return with a letter on Monday. This statement is controverted by the testimony of David Leahy, Supervisor of Elections, who testified that no such instructions have ever been given to his clerks, that if a candidate makes a mistake, it can be corrected at any time.
Perez stated that he never went back to change his voter registration and receive a new voter registration certificate showing his address to be the farm within the district.
Defendant Perez testified that after filing his papers on Friday, he was contacted by the Miami Herald. He told the Herald representative that he thought that the information packet from the Department of Elections stated that he didn't need to reside in the district except at the time he took office. He also told the Herald that he knew that the address was not in the district. The Herald reporter thanked him for being honest. This bothered Perez so much that he called the reporter back and asked what she meant by that! All of these facts come from the testimony of the defendant, himself, and were not contested in the hearing. At no time did Perez tell the Herald reporter that he actually was living at the family's farm. Defendant Perez also stated that he relied on his father who knew the election laws.
Finally, Perez stated that on Saturday at noon, he began to search for another place to live within District seven. By 3 P.M. on Saturday, July 22, 2000, he had leased an apartment in the district at 13911 S.W. 122 Avenue, # 103. On July 24th, he rented furniture for the apartment. It was delivered on July 25, Tuesday, and he moved in. A letter was introduced into evidence from Perez to the election office showing the change of address to 13911 S.W. 122nd Avenue. While the letter was dated Friday, July 21st, the defendant testified that he first saw the apartment on Saturday, July 22nd. The letter was stamped in to the elections office on Monday, July 24th.
The only corroboration that Perez ever stayed in the "Ted's Shed" came from his girlfriend who stated that she visited the structure with him on Friday night and believed he was living there, and from the defendant's father who claimed that he had gone to the farm by himself on Wednesday night, July 19th, and in the dark had carried a bed from his car down the long path and set it up without any assistance.
It is the trier of fact who must determine which evidence is reliable and which should be discounted. In evaluating *289 witnesses, the same standards must be utilized by the court sitting as the trier of fact, as jurors are asked to use. These factors include the demeanor of the witness. In this case Mr. Perez appeared nervous and combative. The intelligence of the witness; Perez is intelligent; The interest that a witness has in the outcome of the case; Perez has a huge and vested interest in remaining on the ballot. The testimony of the witness when considered in the light of all the evidence in the case; the testimony by the defendant defied logic when considering all the opportunities the defendant had to correct his address before filing his papers; it further defied logic to imagine a South Floridian sleeping in a metal shed in the middle of summer in South Florida, walking through undeveloped land in the middle of the night and utilizing an outhouse bathroom without lights to see the way there. The defendant rented an apartment and moved there within a three day period after qualifying. Those same days were available from Wednesday through Friday during the qualifying week. These same comments address the frankness of the witness. The uncontradicted facts in this case cause this court to question the credibility of the testimony presented to the court by the defendant.
Conclusions of Law
The issue before the court is whether Demetrio J. Perez qualified as a candidate for the Dade County School Board in District 7, on the day he filed his qualifying papers. Section 230.10, Florida Statutes, now requires that "each candidate for school board member shall, at the time she or he qualifies, be a resident of the school board member residence area from which the candidate seeks election." It is up to the candidate to read and follow the law. In this case Perez claimed that he wasn't sure when he had to be a resident, and that he relied on his father. Ignorance of the law is never a defense. The assumption is that the candidate knows the conditions for qualifying. Further his statement that he knew he had a problem and had already changed his voter registration to a new address further shows that he was aware of the stature.
This leaves the question of what comprises residency and how that definition fits the facts in this case in order to reach a final judgment in this case.
A legal residence is the place where a person has a fixed abode with the present intention of making it their permanent home. Walker v. Harris, 398 So.2d 955 (Fla. 4th DCA 1981).
Establishment of one's residence depends on a variety of acts or declarations all of which must be weighed in the particular case as evidence would be weighed as to any other subject. Bloomfield v. City of St. Petersburg Beach, 82 So.2d 364 (Fla.1955). "Where a good faith intention is coupled with an actual removal evidenced by positive overt acts, then the change of residence is accomplished. This is so because legal residence consists of the concurrence of both fact and intention. The bona fides of the intention is a highly significant factor." Id. at 368.
In Walker, supra, Ms. Walker moved to a new area in order to run for office. It was her intent to move in order to run. Here are the things she did to carry out her intent; she located, leased and moved into a house in the appropriate district. The house was in bad condition and she tried to get it repaired. Failing that, she moved again signing a lease for space in another house, moved in and took up residence; she notified the bank and the post office of her new address.
In Bloomfield, supra, the candidate had moved into the area from another state some years previously. He left to complete a year of work in another state *290 but kept his residence address with St. Petersburg. He registered to vote, received his mail there. His wife, and all his lifetime of personal effects were all housed in St. Petersburg. The candidate had sold his home in another state, as well.
Legal residence consists of concurrence of both fact and intention, and thus, mere intention to acquire new domicile without fact of actual removal avails nothing; neither does fact of removal without intention. Change of residence is accomplished and becomes effective when there is a good-faith intention to establish it, coupled with the actual physical move to a new residence, as evidenced by positive overt acts. Keveloh v. Carter, 699 So.2d 285 (Fla. 5th DCA 1997).
In examining Perez' intent to establish a permanent residence and his actions, one cannot conclude that both prongs have been met. Perez intended to live in District 7 at some point. He utilized an address on 80th Avenue to show that he resided in the district, but the overt acts are missing. He signed no lease, and paid not rent. He did not know the last names of the occupants or owner and was unclear about the inside rooms of the house. He could not describe the premises with the particularity necessary to show that one lives there. He did change his voter registration, but did not change any bank, credit card, or post office addresses. He did not install a telephone. Later, he tried to state that he moved to the family farm. But there, he did not place a mail box on the property. He did not move any furniture or his personal TV or anything other than a few clothes, if he is to be believed. Even in the light most favorable to the defendant, he did not one thing to show the public that this was his permanent home. He could have changed his voter registration again, but he did not even perform that function. His own testimony placed him at the farm for a period of five hours over the two nights prior to filing for election. If the only overt acts necessary were to take a few clothes to a room for a few hours, one could register to run for office from a hotel room in a foreign state.
Defendant relies on Butterworth v. Espey, 565 So.2d 398 (Fla. 2nd DCA 1990). This case falls under a statute requiring residency at the time of the candidate's name being placed on the ballot, not at the time of qualifying. Even so, Mr. Espey actually owned a home in the proper district even when he qualified but was awaiting a tenant to move out.
Defendant also directs us to the Order in Warren v. Sandra Gord, an order of the 18th Judicial Circuit, in Seminole County. In that case Mr. Goff had declared his intention to run for the school board from district three for over one year. (Mr. Perez made his decision five days before qualifying and stated it was important to keep his intention secret.) Mr Goff told everyone about his intention, other candidates, party bosses and others. Mr. Goff rented a room, signed a lease and then bought a house in the district. These facts differ markedly from the case at bar.
Finally, our own Third District Court of Appeal in its previous ruling in the case at bar has reiterated the commonly accepted axiom that a person's residence is where he says it is. Mr. Perez said that his residence was at 1011 S.W. 80th Avenue on every one of his qualifying papers. He thought it was so important that he even obtained a voter registration certificate with that address and he filed that as proof of his residency with his qualifying papers. Not once has he ever presented the family farm as his residence in any change of address or filing with the Election Department, or any other entity. The 80th Avenue address is not with District 7. Demetrio Perez is not qualified as a candidate for election to the Dade County School *291 Board in District 7 now. He was not qualified in September and accordingly no votes shall be counted for him in the November election.
ORDERED AND ADJUDGED that this court finds Demetrio J. Perez not qualified to run for the office of Dade County School Board Member in District 7.
DONE AND ORDERED in chambers at Miami-Dade County, Florida this 31st day of October, 2000.

BARBARA S. LEVENSON CIRCUIT COURT JUDGE
The order above is affirmed in all respects. We reject the appellant's arguments that anything in the prior proceedings, including our first opinion, precludes this result. See Ladner v. Plaza Del Prado Condo. Assn., 423 So.2d 927 (Fla. 3d DCA 1982)(interlocutory appeal from order granting preliminary injunction does not establish law of the case); Mitzenmacher v. Mitzenmacher, 656 So.2d 178 (Fla. 3d DCA 1995)(interlocutory appellate order only governs later proceedings if facts upon which decision was based remain unchanged).
Finally, we decline at this time to determine the appropriate remedy, and therefore remand to the trial court for its determination as to this issue.
Affirmed; remanded with instructions.
SCHWARTZ, C.J., and GERSTEN, J. concur.
GREEN, J. (dissenting).
This is the second time that this case has appeared before this court. See Perez v. Marti, 770 So.2d 176 (Fla. 3d DCA 2000) ("Perez I"). The original action was styled, "Complaint Seeking Declaratory Action" and contained a single count for substantive relief. The "WHEREFORE" clause of the complaint specifically requested both declaratory and injunctive relief.[1] One week after the complaint was filed, the appellees filed an emergency motion entitled, "Emergency Motion for Injunctive Relief," this motion specifically sought:

declaratory relief stating that Defendant DEMETRIO J. PEREZ did not timely submit filing papers that contained or reflected a residential address in District 7, Miami-Dade School Board, and that such failure bars Defendant DEMETRIO J. PEREZ from running for the seat in District 7, Miami-Dade School Board. Plaintiff further demands injunctive relief ordering Defendant, DAVID C. LEAHY, in his capacity SUPERVISOR OF ELECTIONS OF MIAMI-DADE COUNTY, to remove the name of Defendant DEMETRIO J. PEREZ from the September 5, 2000 ballot due to PEREZ's failure to be a qualified candidate. (emphasis added).
The trial court in Perez I not only granted appellee's emergency motion for injunctive relief, but also granted the appellee's request *292 for declaratory relief. Specifically, the trial court found that:
Demetrio J. Perez did not meet the qualification requirement of Florida Statute 230.10, and had not "established a residency", as defined in law prior to filing of the qualification papers.
* * *
The court GRANTS the complaint for declaratory relief and injunction, declaring Demetrio J. Perez, an unqualified candidate for the office of school board member, District 7, Miami-Dade County, Florida, and an Injunction to that effect is issued. (emphasis in original).
Thereafter, Perez appealed to this court. See Perez I, supra.
In Perez I, this court reversed the injunction as well as the declaratory relief granted. In so doing, this court specifically instructed the trial court "to dissolve the injunction and reinstate Perez's name on the September 5, 2000 ballot." Perez I, 770 So.2d at 178 at *2. Rehearing en banc was denied.
Thereafter, on September 28, 2000, or four weeks after the mandate in Perez I was issued, the appellees filed their Corrected Amended Complaint for Declaratory Judgment and Injunctive Relief. This "corrected amended complaint" mirrors the relief sought in the original complaint, save the addition of a new party and the request that the trial court declare "that Defendant DEMETRIO J. PEREZ was not a resident of District 7 on or before the 12:00 noon July 21, 2000 deadline." The appellants filed a motion for judgment on the pleadings and/or summary judgment based upon this court's opinion in Perez I. In response, the appellees came forth with affidavits and property records in an attempt to show that appellant was not a resident of District 7. This evidence could not constitute new evidence as it could have been adduced in Perez I with the exercise of due diligence. The trial court denied the appellant's motion based upon its conclusion that "[t]he Appellate Court [in Perez I] did not, ..., do anything except dissolve the temporary injunction and remand [this case] back to the trial court." This conclusion erroneously failed to recognize that this court also ruled and reversed the trial court's declaration in Perez I. Based on that error, the trial court held an entirely new evidentiary hearing. (The trial court's 10 page final judgment is set out in the majority's opinion).
Because I believe that the trial court's order and the majority's opinion violate the basic legal principles of finality with respect to decrees rendered by appellate courts, I respectfully dissent. The order at issue below in Perez I was clearly declaratory in its form as well as in its function, as it unequivocally declared appellant to be an unqualified candidate and took him off the ballot. Moreover, this court's opinion reversing the original action and instructing that the appellant's name be placed back on the ballot is further evidence that the declaratory judgment had been reversed.
In dismissing the original order in Perez I granting the petition for declaratory judgment and injunctive relief as a mere temporary injunction, this court has ignored Florida law which requires that a declaratory judgment be treated as a final order. See Canal Ins. Co. v. Reed, 666 So.2d 888, 890-91 (Fla.1996)(stating that: "a declaratory judgment `has the force and effect of a final judgment.' As such a declaratory judgment is res judicata of all matters at issue between the parties..."). Thus, the majority's reliance upon Ladner v. Plaza Del Prado Condominium Association, Inc., 423 So.2d 927 (Fla. 3d DCA 1983) and Mitzenmacher v. Mitzenmacher, 656 So.2d 178 (Fla. 3d DCA 1995) is disingenuous and misplaced. Clearly from the above stated facts, the order of the trial court and the opinion of this court in Perez I was far more than an order granting and/or reversing a preliminary injunction. Similarly, the majority's reliance on Mitzenmacher fails as the facts *293 here are no different than the facts which could have and should have been before this court in Perez I.
Thus, I believe that under the "law of the case" doctrine the trial court's order was improperly entered in this case and would therefore reverse.[2]See Gabor v. Gabor, 599 So.2d 737, 739 (Fla. 3d DCA 1992)(error for trial court to enter order on a point previously determined because of "law of the case" doctrine); Strazzulla v. Hendrick, 177 So.2d 1, 4 (Fla.1965)(exception to rule binding parties to "law of case" should never be allowed when it would amount to nothing more than a second appeal on a question determined by first appeal).
For all of the foregoing reasons, I dissent.
NOTES
[1] The Complaint specifically requested the following relief:

A. A declaration that Defendant DEMETRIO J. PEREZ did not timely submit filing papers that contained or reflected a residential address in District 7, Miami-Dade School Board;
B. A declaration that Defendant DEMETRIO J. PEREZ's failure to timely submit filing papers that contain or reflect a residential address in District, bars him from running for the seat in District 7, Miami-Dade School Board;
C. A declaration that Defendant DEMETRIO J. PEREZ's name should be removed from the ballot, if possible, for the election for Miami-Dade School Board scheduled for September 5, 2000.
D. A declaration that Defendant DEMETRIO J. PEREZ's votes will not be counted should his name remain on the ballot; and
E. An Order enjoining Defendant DAVID C. LEAHY, in his capacity as SUPERVISOR OF ELECTIONS FOR MIAMI-DADE COUNTY, for placing Defendant DEMETRIO J. PEREZ's name in the September 5, 2000 election ballot and/or from qualifying PEREZ for District 7 election.
F. Any further relief as this Court deems just and proper under these circumstances.
[2] "Law of the case" is the principle followed by courts to avoid the reconsideration of points of law which were, or should have been, adjudicated in a former appeal of the same case; its purpose is to lend stability to judicial decisions, to avoid piecemeal appeals, and to bring litigation to an end as expeditiously as possible. Williams v. City of Minneola, 619 So.2d 983, 987 (Fla. 5th DCA 1993).