# Third District Court of Appeal

## State of Florida

Opinion filed September 10, 2024.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D24-1486
Lower Tribunal No. 24-14786-CA-01
_____

**Ivan Pacheco,**
Appellant,

vs.

**Arturo Jinete, et al.,**
Appellees.

An Appeal from the Circuit Court for Miami-Dade County, Tanya Brinkley, Judge.

Brodsky Fotiu-Wojtowicz, PLLC, Benjamin H. Brodsky, and Joshua Truppman, for appellant.

David J. Winker, P.A., and David J. Winker, for appellee Arturo Jinete.

Before LOBREE, BOKOR and GOODEN, JJ.

BOKOR, J.

Ivan Pacheco appeals from the trial court's final order denying his complaint for declaratory judgment and injunctive relief, wherein he sought to disqualify Arturo Jinete from participating as a candidate in the mayoral/councilmember election for the Town of Medley (Medley or the Town). Because the trial court both properly applied the law and supported its determination that Jinete met the residency requirement with competent substantial evidence, we affirm.

## BACKGROUND

On August 6, 2024, Pacheco sought declaratory relief and an injunction against Jinete and the relevant ministerial actors seeking to deem Jinete ineligible to participate as a candidate for Medley mayor or town councilmember in the November 5, 2024, election. Pacheco contends that Jinete is not qualified as a candidate because he failed to meet the residency requirement outlined in the Town Charter. Article VII, Section 6, Subsection A of the Town Charter imposes a one-year residency requirement preceding qualifying for a mayoral or councilmember election:

> Any qualified elector of the Town who has resided in the Town for a minimum of one (1) year preceding the first day of the qualifying period in any town election, shall be eligible as a candidate for the office of mayor or councilmember in that town and may be nominated as a candidate for office by petition.

2

The first day of the qualifying period for the November 5, 2024, election was July 8, 2024, thus requiring establishment of residency in Medley on or before July 8, 2023.

After expedited discovery, the trial court held a final evidentiary hearing on August 20, 2024. Pacheco and Jinete both testified, as well as Jinete's neighbor. The trial court viewed photographs, examined documents, heard arguments of each party's counsel, and reviewed the court file and relevant law. The trial court issued an order containing findings of fact, including the fact that on June 30, 2023, Jinete purchased the Medley property, located at 7615 NW 68 Court, Medley, Florida (the Property). The trial court found that it was "his intent to reside there permanently for purposes of satisfying the residency requirement necessary for his candidacy."

The trial court found that after closing, Jinete "promptly learned that the [P]roperty was infested with termites and mold was present." Noting the cross-examination "as to whether [Jinete] intended to replace the trailer with a new trailer or renovate the trailer . . . it became crystal clear to the Court that [Jinete] elected to renovate the trailer in lieu of replacing it due to excessive cost and time." The trial court noted the unrebutted testimony of local resident Humberto Varona, "that he observed [Jinete] at the Property

for several hours over several days performing work," which would be consistent with a desire to renovate the property.

The trial court also credited the following sequence of events that Jinete testified to:

1.     June 30, 2023

Purchased the Property.

2.     July 1-3, 2023

At the Property daily. Learned mold and termite infestation was present.

3.     July 5, 2023

Opened a Miami-Dade Water & Sewer account for Property address.

4.     July 6, 2023

Changed work address to the Property address.

5.     July 7, 2023

Change Voter Registration Card from Broward County to Property address in Miami-Dade County.

6.     July 7, 2023

Opened a Florida Power & Light account for the Property address. [Footnote noting that "electricity, under the prior owner's name, existed at the property prior to opening his personal account."]

7.     July 8, 2023

4

Hired Lopera Corp., a garbage company to commence hauling approximately 21 tons of garbage from the Property. Garbage hauling concluded on July 28, 2023.

8.    July 31, 2023

[Town] issued a stop work order for the Property preventing further renovations without a permit.

9.    August 6, 2023

Moved into Rental.

10.    August 7, 2023

Retained an architect to prepare renovation plans because of stop work order.

It is undisputed that [Jinete] did not sleep in the [Town] until August 6, 2023, when he moved into the Rental because it was clear that the Property renovations would not be concluded soon due to the stop work order. [Jinete] admitted that he mistakenly believed that a trailer renovation did not require a permit because it was like a car. In fact, his renovations exceeded 50% and required a permit which increased the renovation timeline.

In addition, the trial court made the following determinations regarding

Jinete's credibility:

This Court is the trier of fact who must determine which evidence is reliable and which should be discounted. In evaluating witnesses, the same standards must be utilized by the court sitting as the trier of fact, as jurors are asked to use. These factors include the demeanor of the witness. In this case [Jinete] appeared cooperative and calm. The intelligence of the witness; [Jinete] is intelligent; The interest that a witness has in the outcome of the case; [Jinete] has a substantial interest in remaining on the ballot. The testimony of the witness when considered in the light of all the evidence in the case; the

5

testimony by [Jinete] seemed logical and he was able to outline in a detailed manner the steps that he took to purchase the Property and the actions that he took in determining to renovate the [P]roperty and his residency. The testimony regarding [Jinete's] decision to renovate vs. replace did not give rise to question [Jinete's] credibility. [Jinete] never made a fraudulent effort to assert that he in fact slept in the [Town] during the period at issue, rather he was frank as to his absence and provided a detailed explanation as to why. The uncontradicted facts in this case do not cast doubt as to the credibility of [Jinete]. The Court finds that [Jinete] was credible and provided substantial and competent evidence that was unrefuted.

The trial court, relying on Meisman v. Hernandez, 353 So. 3d 669 (Fla. 2d DCA 2022), weighed the evidence and found that Jinete had the requisite intent and provided competent substantial evidence of the requisite overt acts necessary to establish his residency in the Town as of July 8, 2023. Pacheco timely appealed.

## ANALYSIS

We review the trial court's order under a mixed standard of review. "An order in a declaratory judgment action is generally accorded a presumption of correctness on appellate review. However, to the extent that the decision rests on a question of law, the order is subject to full, or de novo, review on appeal." Reform Party of Fla. v. Black, 885 So. 2d 303, 310 (Fla. 2004) (internal citation omitted). In addition, a trial court's determination of a candidate's qualification is reviewed for competent substantial evidence.

6

Meisman, 353 So. 3d at 673; Perez v. Marti, 770 So. 2d 284, 286 (Fla. 3d DCA 2000) ("Perez II").

Pacheco contends that Jinete is not qualified as a candidate for Town mayor or councilmember because he did not meet the Town's residency requirement, which required Jinete to reside "in the Town for a minimum of one (1) year preceding the first day of the qualifying period . . . ." Pacheco argues that the purchase of the Property and the other overt acts fall short of establishing present intention and removal, primarily because Jinete did not spend one night in Medley until August 6, 2024, after the July 8, 2024, date by which Jinete had to establish residency. Pacheco also argues that the evidence shows that Jinete never intended to reside in that Property, or, at a minimum, that by July 8, Jinete at best had an intent to reside at the property in the future, and his overt acts don't constitute the necessary present intention and removal. While we apply the law de novo, we review the trial court's factual findings and credibility determinations under an abuse of discretion/competent substantial evidence standard. In applying such mixed review, we find the trial court properly applied the law to the factual findings, which were supported by competent substantial evidence.

This court has explained that "[a] legal residence is the place where a person has a fixed abode with the present intention of making it their

permanent home." Perez II, 770 So. 2d at 289. Moreover, "where a good faith intention is coupled with an actual removal evidenced by positive overt acts, then the change of residence is accomplished and becomes effective." Bloomfield v. City of St. Petersburg Beach, 82 So. 2d 364, 368 (Fla. 1955). So we examine legal residency under a two-part test:

> A change of residence is accomplished and becomes effective when there is a good-faith intention to establish it, coupled with an actual physical move to a new residence, as evidenced by positive overt acts. This is so because legal residence consists of the concurrence of both fact *and* intention. Stated otherwise, the mere intention to acquire a new domicile without the fact of an actual removal avails nothing; neither does the fact of removal without the intention.

Keveloh v. Carter, 699 So. 2d 285, 288 (Fla. 5th DCA 1997) (internal citation omitted). In establishing one's residence, "an individual's intent is a subjective factor and the best proof of one's domicile is where [the person] says it is." Perez v. Marti, 770 So. 2d 176, 178 (Fla. 3d DCA 2000) ("Perez I") (quotation omitted). Jinete consistently said that his domicile as of July 8, 2023, was at the Property, which the trial court found credible. In analyzing the positive overt acts taken to indicate actual physical removal to a new residence, courts consider facts such as purchasing a new property, updating legal documents to reflect the new address, and spending time at the new residence, among other factors. Meisman, 353 So. 3d at 673-74.

8

In its final order, the court relied significantly on <u>Meisman</u> in determining that Jinete met the residency requirements by the required date. In <u>Meisman</u>, Meisman, Hernandez, and Washington were school board candidates in Pasco County. <u>Id.</u> at 671. Meisman filed a complaint challenging Hernandez's candidacy, contending Hernandez did not meet the residency requirement during the qualifying period of June 13-17, 2022. <u>Id.</u>

At the nonjury trial, Hernandez testified and provided the following relevant facts: He previously resided outside of the relevant district, but in March 2022, he contracted to buy a home in Zephyrhills, located inside the district. <u>Id.</u> Hernandez's intent was to make the Zephyrhills home his legal residence. <u>Id.</u> He closed on the Zephyrhills home on April 8, 2022. <u>Id.</u> Before the qualifying period, Hernandez spent one night in the Zephyrhills home, but he could not continue to stay there due to moisture and mold. <u>Id.</u> In May 2022, Hernandez updated his driver's license and voter's registration to reflect his new Zephyrhills home residence. <u>Id.</u> In addition, he filed an application to transfer his homestead exemption to the Zephyrhills home. <u>Id.</u> Hernandez also began renovations with a contractor in May 2022. <u>Id.</u> Hernandez ordered new appliances for the home. <u>Id.</u> He had his internet provider transfer services in early June. <u>Id.</u> at 671-72. Hernandez did not sleep at the Zephyrhills home during the June 13-17 qualifying period

9

because of the lack of fixtures and renovation work being done, but he did visit the home every day to supervise the renovations. Id. at 672.

The trial court, relying on the facts as outlined above, ruled that Hernandez didn't meet the residency requirement and disqualified him from the election. Id. The trial court stated that while Hernandez had the intent to move in, he had not established his residency because "he was not 'living' at the Zephyrhills home." Id. (This is nearly the same argument made by Pacheco here.) On appeal, the Second District Court of Appeal held that the trial court erred in disqualifying Hernandez from the election. Id. at 673. The appellate court found that the trial court had "overemphasized the fact that Mr. Hernandez had not moved into the Zephyrhills residence or regularly spent the night there before or during the qualifying period." Id. In analyzing whether Hernandez had met the residency requirement, the court noted that Hernandez "took several positive overt acts to become a resident" of the district before and during the qualifying time. Id. The court held that:

> He purchased the Zephyrhills home with the undisputed intent of making it his permanent residence and began renovating it. He updated his driver's license, voter's registration, and homestead exemption to indicate that the Zephyrhills home was his residence. He also began the process of transferring his internet service to the Zephyrhills home. All of these actions were relevant considerations in determining whether Mr. Hernandez accomplished a removal. *See Bloomfield*, 82 So. 2d at 369 (considering the sale of a prior home, acquisition of a new home, the transfer of bank accounts, filing of tax returns, and

10

maintenance of new residence as establishing the fact and intent of residence); *Perez II*, 770 So. 2d at 290 (examining whether a candidate undertook sufficient overt acts to establish a residence by considering whether he updated his voter registration, his familiarity with the new residence, whether he updated his address on any accounts, whether he installed a telephone or mailbox, and whether candidate had moved his personal belongings into the home).

Id. As part of the review of the totality of the circumstances and relevant considerations, the court also noted that Hernandez spent the night at the home on one occasion before the qualifying period but did not spend the night at the home before or during the qualifying period. Id. at 674. Additionally, during the qualifying period, the court noted Hernandez spent between one and five hours per day at the Zephyrhills residence to supervise the renovation. Id.

Turning to the facts of the case before us, in analyzing Jinete's intent, the trial court explained that:

In evaluating [Jinete's] intent to establish a permanent residence and his actions, one can conclude that both prongs have been met. [Jinete] clearly intended to live in the [Town]. He utilized an address in the [Town] to show that he resided in the [Town]. He purchased property on June 30, 2023, which he later determined to be uninhabitable. He signed a lease on August 6, 2023. He changed his work address to the Property address. He changed his voter registration from Broward County to the address of the Property in [Town] of Medley, Miami-Dade County. He opened a water and electricity account at the Property address. In the light most favorable to [Jinete], he did many things to show the public that this was his permanent home. [Jinete's] positive overt acts

11

demonstrate intent and establish removal.

In addition to Meisman, the trial court relied on Walker v. Harris, 398 So. 2d 955, 958-59 (Fla. 4th DCA 1981), for the proposition that "[w]ithout question, notification to authorities and to the public at large is a relevant factor to consider in weighing a disputed issue of legal residence."

The trial court found that "[t]he countless overt steps taken by [Jinete] tend to weigh heavily on this Court as evidence of [Jinete's] intent, and his failure to specifically rest his head at night in the [Town] does not disturb his daily labor at the Property to prepare for his unexpectedly delayed move, in light of the overall picture." Accordingly, the trial court determined that "the facts in Meisman are aligned to defendant Jinete's facts. This Court cannot eliminate removal solely on the single fact that defendant Jinete, did not spend a single night in the [Town], without taking all other facts into account. His overwhelming positive overt acts demonstrate intent and removal."

We find that the trial court's conclusion was supported by competent substantial evidence. The only relevant fact that distinguishes Jinete's fact pattern from the one examined in Meisman is the location of one night of sleep. Meisman slept in his house for one day before commencing renovations; Jinete didn't. But Meisman, and the relevant case law for determining intent, removal, and residency for qualification purposes, don't

12

establish a bright-line test. Rather, the law requires an examination of overt acts and representations. "[E]stablishment of one's residence will usually depend on a variety of acts or declarations all of which must be weighed in the particular case as evidence would be weighed upon any other subject." Meisman, 353 So. 3d at 672 (quoting Bloomfield, 82 So. 2d at 369); see also Keveloh, 699 So. 2d at 288. Pacheco points to no statute, opinion, or authority that creates a bright-line rule that the failure to sleep in a location outweighs consideration of all other factors. Instead, as indicated by the trial court's order, this is but one factor that the trial court must weigh in its examination and determination of intent and removal.

Upon examination of the record evidence, the trial court determined that Jinete's expressed intention and overt acts established intent and removal. Not only do we decline to substitute our judgment for that of the trial court weighing the evidence presented, but we also note that "the law requires judges to resolve doubts about qualification of a political candidate in favor of the candidate." Smith v. Crawford, 645 So. 2d 513, 520 (Fla. 1st DCA 1994); see also Walker, 398 So. 2d at 957 (explaining that findings by a trial court will not be disturbed on appeal "unless there is a lack of substantial evidence to support the court's conclusion" (quotation omitted)).

Affirmed.

13