595 So.2d 573 (1992)
Riccardo YON, Appellant,
v.
Lorraine FLEMING, Appellee.
Nos. 91-1731, 91-3022.
District Court of Appeal of Florida, Fourth District.
February 13, 1992.
On Motion for Rehearing and Certification March 25, 1992.
*574 Alan R. Burton of Burton & Burton, Fort Lauderdale, for appellant.
Michele I. Nelson of Paxton, Crow, Bragg, Smith & Keyser, P.A., West Palm Beach, for appellee.
FARMER, Judge.
Each of the above parties has filed a separate notice of appeal from a different order in the same proceeding below. We consolidate these appeals on our own motion to achieve a more efficient consideration and a congruent disposition.
Appellant is the father, and appellee is the mother, in paternity proceedings first begun in Palm Beach County, the place where the father now lives and where he has de facto custody of their child. After the mother later commenced paternity proceedings in New York, the trial judge in Palm Beach County entered an order commanding the father to appear before the Family Court in Rockland County, New York, and later denied his motion to strike that order.
When the father did not appear or file anything in New York, the judge there permanently awarded custody to the mother. She then sought enforcement of the New York final decree in the Palm Beach proceeding, but the judge here denied it. The father seeks non-final review of the order requiring his appearance in New York and the later refusal to strike it, while the mother seeks non-final review of the refusal to enforce the out-of-state decree.
The child was born in New York in July 1988, where he lived with his mother for much of the next two years, and where the father also lived until 1990. She did bring the child to Florida for brief periods but always returned with him to New York. In January 1991, however, while she faced some housing difficulties, she asked the father to assume temporary care of the child. Then when her housing problem abated, she asked that the child be returned to her, as he had previously agreed to do.
He refused and instead filed an action in the Circuit Court in Palm Beach County seeking a declaration of paternity and an order of permanent custody. The trial *575 judge here entered an ex parte order giving him temporary custody. She responded one week later by filing a similar action in the Family Court in New York which, on the same day, entered an order giving her temporary custody.
Several days later, the New York court acknowledged that the Florida court had previously exercised jurisdiction over the custody of the child but expressed its desire to determine whether it had jurisdiction to decide permanent custody. It ordered the father to appear in New York with the child on June 12, 1991, requesting that the Florida court assist it by ordering the father to make the appearance.
The mother then appeared in Florida to challenge its jurisdiction and asserted the primacy of the New York court under the Uniform Child Custody Jurisdiction Act [UCCJA], sections 61.1302 to 61.1348, Florida Statutes (1991). On May 28, 1991, the Circuit Court granted the request of the New York judge and entered an order requiring the father to appear in New York with the child as ordered on June 12th. The Florida judge also wrote the New York judge enclosing a copy of his order and expressing the hope that the father would comply and thereby resolve the question on jurisdiction. The father not only failed to appear in New York on June 12th, but he also failed even to file anything  there or here  before the scheduled hearing date. Instead he waited until June 18, 1991, and then filed his appeal to this court.
Meanwhile, the New York court proceeded on June 12th to receive evidence from the mother and ultimately determined that it had jurisdiction and awarded her permanent custody. It directed that a warrant for the father's arrest in New York be issued. The judge also wrote the Florida judge and requested the Florida court's assistance in enforcing the New York final decree. The father then went to New York and filed a motion in that court to vacate the default against him, but to no avail. She then returned to the Florida court with this decree in hand and sought an emergency hearing on its enforcement. The circuit judge denied enforcement, saying that he never believed that the New York court would go forward on the merits and order permanent custody.
Strictly speaking, the order requiring the father to appear in New York with the child, as well as the court's later refusal to strike that order, are not appealable under rule 9.130(a)(3), Florida Rules of Appellate Procedure. They do not fit within any of the listed categories of orders which we may review before a final judgment is entered. Admittedly, rule 9.130(a)(3)(C)(iii) allows non-final review of custody orders. But we do not understand the assistance order requiring his appearance in New York as anything more than precisely that, an assistance order, not a determination of custody. Hence, we lack jurisdiction under rule 9.130 to hear the father's appeal.
Nor do we read rule 9.130 as allowing non-final review of the September 24, 1991, denial of enforcement of the final New York decree. The Florida judge did not purport to award custody in his order. In fact, he merely cited the pendency of the father's appeal from the assistance order and denied enforcement. It follows, therefore, that we also do not see the denial of enforcement as a final order on the question and thus cannot give it plenary review under rule 9.110.
Ordinarily we would end our discussion at this point. For even though we are charged by rule 9.040(c) not to deny relief simply because a party has sought the wrong remedy, the rule also relieves us of the responsibility to seek the correct one. In the usual cases we require litigants to make some attempt to seek entrance to the correct appellate door. But in the kind of case we face today, however, we confront also the interests of unrepresented children, who have no voice of their own in these proceedings and whose lives may be affected by the failure of their custodians to press the right appellate doorbell. The ordinary remedies thus lacking, we turn to whether an extraordinary remedy is at hand.
The UCCJA contains several provisions requiring a Florida court to cooperate with *576 or defer to a court in another state about custody of a minor child. For example, section 61.1342(3) authorizes a Florida court to order a person to appear with a child in another state at custody proceedings. Section 61.1316 allows the courts asserting jurisdiction, as here, to confer and communicate with regard to a decision as to which of them is the more appropriate forum to wage the custody/support contest. Similarly, section 61.1314 requires a court, upon learning of simultaneous proceedings in another state, to confer with the other court and, in some circumstances, to stay its own proceedings while both sort out which is the better forum.
These statutes appear to empower judges to implicate rights and duties in the context of UCCJA and the immediate custody of children which could become meaningless if not, in some instances, subject to review or consideration by the extraordinary writs. Suppose, for example, that the parent and the child had always lived in this state, but the court of a distant state ordered that parent to appear there to contest a non-custodial parent's application for a change in custody  or, worse, to answer for not complying with an ex parte final decree changing custody.
Requiring that parent either to comply with that order or face the consequences may subject that parent to a loss of custody, or arrest or other sanctions, without any review of the propriety of the order. That circumstance seems to fit the essence of certiorari. Thus, it seems probable that, as an abstract proposition, certiorari jurisdiction theoretically may exist in a proper case to review an order requiring a custodian to appear in another state with the child. Similarly, the refusal to enforce the final New York decree, if not a final order susceptible to review under rule 9.110, may also be subject to an extraordinary remedy if the applicable elements are otherwise present.
We see no legal error in the court's assistance to the New York court requiring the father to appear there. Under the circumstances of this case, even though the first action was filed here, we think that our trial court could properly have directed the father, at the request of the New York judge, to appear in New York with the child. The child had lived most of his life in New York with his mother and was sent by her to Florida for only a temporary stay with the father, who had by then moved here. The father's application to the Florida court was precipitated by his refusal to return the boy to his mother in New York, as he had agreed to do.
Section 61.1314(3), Florida Statutes (1991), provides:
If the court is informed that a proceeding was commenced in another state after it assumed jurisdiction, it shall likewise inform that other court to the end that the issues may be litigated in the more appropriate forum.
Moreover, section 61.134 provides:
A court of this state may request the appropriate court of another state to order a party to custody proceedings pending in the court of this state to appear in the proceedings and, if that party has physical custody of the child, to appear with the child.
These statutes obviously authorized the New York court to make the request of the Florida judge for assistance and, equally we think, the Florida judge to order the father to take the boy to New York for an appearance there to determine whether New York was the more appropriate forum. See Pedowitz v. Pedowitz, 492 So.2d 472 (Fla. 4th DCA 1986). The UCCJA makes clear that the presence of the boy here, and the filing of the Florida case before the New York one, do not control this judicial tug-of-war. Nussbaumer v. Nussbaumer, 442 So.2d 1094 (Fla. 5th DCA 1983); Hickey v. Baxter, 461 So.2d 1364 (Fla. 1st DCA 1984).
Plainly, the father was given a remedy on the jurisdictional issue by the two judges. Both, in effect, ordered him to appear in New York with the child and make his case as to why Florida was the "more appropriate forum" for the custody contest instead of New York. His failure to appear at the New York hearing on June 12, 1991, as directed by both courts, or file *577 any paper in New York contesting its power to proceed, effectively waived any objection he had to litigating in New York. Thus, there is no error  much less a departure from the essential requirements of law  as to the first two orders.
The order denying enforcement of the final custody decree presents a different problem. Although he raises some objections to enforcement which do not merit discussion, the father does contend that the proceeding here was a paternity action under chapter 742, Florida Statutes (1991), and that this court has previously determined that the UCCJA is not applicable in paternity actions. That argument misses, however, the rather narrow import of our holding in Notarfonzo v. Kline, 464 So.2d 656 (Fla. 4th DCA), rev. denied, 472 So.2d 1181 (Fla. 1985).
We first note that there were no simultaneous proceedings pending in another state in Notarfonzo, as there are in this case. And even if there had been, the proponent of exclusive jurisdiction in the other state in Notarfonzo had, himself, asked the Florida court to adjudicate paternity and award him custody of the minor child.
Our decision thus does not hold that the UCCJA is displaced in paternity cases. To do so would contravene the language of section 61.1306(3), which says:
"Custody proceeding" includes proceedings in which a custody determination is one of several issues, such as an action for dissolution of marriage or separation, and includes child neglect and dependency proceedings. [e.s.]
The operative word, "includes," is here a term of enlargement, not of limitation. The provision obviously does not exclude the application of UCCJA to proceedings other than dissolution of marriage, dependency or neglect. Instead, it "includes" any proceeding in which "a custody determination is one of several issues." Thus, Notarfonzo merely stands for the unexceptional proposition that the UCCJA does not oust the circuit court of the power to preside over chapter 742 proceedings, even where one parent has had some contacts with the child in the other state.
The final decrees of other states awarding permanent custody of children are entitled to full faith and credit in Florida, by the provisions of 28 U.S.C. § 1738A. Indeed, even if that were not true as a general proposition, section 61.1328 makes it specifically so. One of the expressed purposes of the UCCJA was to "facilitate the enforcement of custody decrees of other states." § 61.1304(7), Fla. Stat. (1991). Under section 61.1328, we are required to honor and enforce such decrees even though, as here, there is some theoretical basis under UCCJA for Florida to assert jurisdiction such as the presence of the child in this state, where the decision in the other state was made substantially in conformity with the UCCJA. Nussbaumer v. Nussbaumer, 442 So.2d 1094 (Fla. 5th DCA 1983).
This child had some contacts with both New York and Florida  such that the assumption of jurisdiction in either forum would have had something to support it under UCCJA. It matters nothing that the New York judge's determination was made after the father defaulted in his obligation to appear there. It is just as binding as if he had appeared and fought the jurisdictional battle in New York. The fact that the father's default has since been upheld by the New York judge only adds greater force to our unwillingness to allow him to avoid compliance any longer with the New York court order. Hence, there is simply no basis to have denied enforcement.
Treating the papers, therefore, as a petition for a writ of mandamus to enforce the final New York decree, we grant the relief and instruct the circuit judge to enforce the New York decree. We withhold actual issuance of our writ on the assumption that the circuit judge will comply without so doing.
APPEAL DISMISSED; WRIT OF MANDAMUS GRANTED.
GLICKSTEIN, C.J., and POLEN, J., concur.

*578 ON MOTION FOR REHEARING AND FOR CERTIFICATION
PER CURIAM.
We grant rehearing only as to our grant of appellee's motion for attorney's fees on appeal. In that regard, we vacate our prior order and remand to the trial court for a determination under section 742.031, Florida Statutes (1991), both as to entitlement and  if appropriate  as to the amount of any fees to be awarded. We expressly disclaim making any decision ourselves as to the mother's entitlement to attorney's fees for these appellate proceedings because of the absence of an evidentiary record on which to base an award of fees under section 742.031. See Hornsby v. Newman, 444 So.2d 90 (Fla. 4th DCA 1984), and Marino & Goodman, P.A. v. Chapman, 561 So.2d 1318 (Fla. 4th DCA 1990).
In all other respects the motions for rehearing and for certification are denied.
GLICKSTEIN, C.J., and POLEN and FARMER, JJ., concur.