699 So.2d 285 (1997)
Diane KEVELOH, Appellant,
v.
Gary CARTER, Appellee.
No. 96-3391.
District Court of Appeal of Florida, Fifth District.
September 5, 1997.
*287 Mark F. Fisher of Stump, Storey & Callahan, P.A., Orlando, for Appellant.
No Appearance for Appellee.
W. SHARP, Judge.
Diane Keveloh appeals from an order denying her motion to dismiss a paternity and custody proceeding filed by Gary Carter. We reverse because Florida lacks subject matter jurisdiction over this proceeding. Further, Florida never acquired personal jurisdiction over Keveloh. She was immune from service of process while attending these court proceedings, and any out-of-state service would be defective because she is a nonresident with insufficient contacts with this state.
In May 1994, Keveloh, a resident of Illinois, visited Orlando for a two-week vacation. There she met Carter, a Florida resident. The two began a relationship and alternated brief visits between Florida and Illinois. While Carter was visiting Keveloh in Illinois in the fall of 1994, their son Shawn was conceived. Carter returned to his home in Florida and Keveloh remained in her home in Illinois. The parties' relationship deteriorated and they had little contact with each other, with the exception of a few telephone calls. After Shawn was born in June 1995, Keveloh contacted her local Illinois police department to try to stop Carter from harassing her.
In the early part of 1996, Carter attempted to reconcile with Keveloh. Keveloh agreed to come to Florida to "test" her relationship with Carter. It was a failure. Keveloh returned to her home in Illinois with the parties' child, after two and one-half months.
Carter filed this paternity action on May 21, 1996. At this time, Keveloh had already returned to Illinois with Shawn. Without notice to Keveloh, Carter obtained an order granting him temporary custody of Shawn. Keveloh filed a motion to quash this custody order and to dismiss the entire proceedings for lack of personal and subject matter jurisdiction, among other things. Keveloh was eventually served with process on October 7, 1996 when she appeared at the courthouse in Florida to attend an evidentiary hearing on her motion. The court denied Keveloh's motion and entered an order determining paternity and custody.
While not expressly raised as an issue on appeal, Keveloh did challenge subject matter jurisdiction below and the issue is properly considered here.[1] The Uniform Child Custody Jurisdiction Act applies to paternity actions where custody is in issue. Yon v. Fleming, 595 So.2d 573 (Fla. 4th DCA), rev. denied, 599 So.2d 1281 (Fla.1992). See also Wrenn v. McDonnell, 671 So.2d 884 (Fla. 5th DCA 1996). In his complaint to establish paternity, Carter sought a determination of shared parental responsibility, custody and visitation, thus invoking the provisions of the UCCJA.
Under the UCCJA, Florida lacks subject matter jurisdiction. The parties' son was conceived in Illinois, was born in Illinois, and has lived most of his life in Illinois. Florida was never the child's home state. Nor was it the child's home state within six months before this action was commenced. See § 61.1308(1)(a), Fla. Stat. (1995). The child is not present in Florida and there is no basis for emergency jurisdiction. Illinois is clearly the only appropriate forum to decide the paternity and custody issues concerning Shawn. See Dorrity v. Dorrity, 695 So.2d 411 (Fla. 5th DCA 1997); Flores v. Saunders, 674 So.2d 767 (Fla. 5th DCA), rev. denied, 687 So.2d 1305 (Fla.1996); Chapoteau v. Chapoteau, 659 So.2d 1381 (Fla. 3d DCA 1995). Because the Florida court lacked subject matter jurisdiction, its paternity and custody order is void. Chapoteau,
*288 The Florida court also lacks personal jurisdiction over Keveloh. As a general rule, Florida courts have personal jurisdiction over nonresidents when that nonresident is properly served with service of process while voluntarily present in the state. See Burnham v. Superior Court of California, 495 U.S. 604, 110 S.Ct. 2105,109 L.Ed.2d 631 (1990); Garrett v. Garrett, 668 So.2d 991, 994 (Fla.1996) (Wells, J. concurring). Nonetheless, nonresidents who voluntarily come into the jurisdiction to attend court as witnesses or parties are generally immune from service of process while attending court and for a reasonable time before and after going to court and in returning to their homes. Lienard v. DeWitt, 153 So.2d 302 (Fla.1963); State ex rel. Ivey v. Circuit Court of Eleventh Judicial Circuit, 51 So.2d 792 (Fla. 1951); State ex rel. Cox v. Adams, 148 Fla. 426, 4 So.2d 457 (1941); Rorick v. Chancey, 130 Fla. 442, 178 So. 112 (1937).
The reason for this rule is to aid in the orderly administration of justice. It is important to the judicial process that persons having knowledge of the matters in issue be motivated to appear and disclose those facts. The possibility of being served with process while doing so might well deter witnesses or parties from coming forward. Cordoba v. Cordoba, 393 So.2d 589 (Fla. 4th DCA 1981). Here Keveloh appeared specially in Florida to contest the jurisdiction of the Florida courts. It would be incongruous to allow service of process during this time. See State ex rel. Cox; Rorick; Cordoba.
Since Keveloh was immune from service of process while in Florida, there was only one ground that Florida possibly had to assert personal jurisdiction over Kevelohthat she was a Florida resident.[2] However, at a hearing held October 7, 1996, and by affidavit filed prior thereto, Keveloh refuted any reasonable basis, based on her conduct or her intent, for the court to have concluded she ever intended to make Florida her domicile or permanent residence. Even though an earlier unreported hearing was held in this case on August 13, 1996, of which Keveloh had no notice, the contested hearing held on October 7, 1996, for which a record was made, was explicitly conducted in order for the court to consider "all issues, including jurisdiction ..." That is the key basis upon which the trial court's orders must stand or fall.
A person may have several temporary local residences but can have only one legal residence. Walker v. Harris, 398 So.2d 955 (Fla. 4th DCA 1981). A legal residence or "domicile" is the place where a person has fixed an abode with the present intention of making it his or her permanent home. Minick v. Minick, 111 Fla. 469, 149 So. 483 (1933); Latta v. Latta, 654 So.2d 1043 (Fla. 1st DCA 1995); Walker. Once established, a domicile continues until it is superseded by a new one. A domicile is presumed to continue, and the burden of proof ordinarily rests on the party asserting the abandonment of one domicile to demonstrate the acquisition of another. Texas v. Florida, 306 U.S. 398, 59 S.Ct. 563, 83 L.Ed. 817 (1939); McDougald v. Jenson, 786 F.2d 1465 (11th Cir.), cert. denied, 479 U.S. 860, 107 S.Ct. 207, 93 L.Ed.2d 137 (1986).
A change of residence is accomplished and becomes effective when there is a good-faith intention to establish it, coupled with an actual physical move to the new residence, as evidenced by positive overt acts. This is so because legal residence consists of the concurrence of both fact and intention. Bloomfield v. City of St. Petersburg Beach, 82 So.2d 364 (Fla.1955). Stated otherwise, the mere intention to acquire a new domicile without the fact of an actual removal avails nothing; neither does the fact of removal without the intention. Bloomfield, 82 So.2d at 367. The bona fides of the intent is a highly significant factor. An individual's intent is subjective and therefore the best proof is where he or she says it is. Bloomfield; Walker. Finally, the intention to acquire a new domicile must be to make a home at the moment, not to make a home in the future. Campbell v. Campbell, 57 So.2d 34 (Fla.1952).
*289 In this case, it was unrefuted that Keveloh was a life-long resident of Illinois. She was born in Illinois, attended school in Illinois and was married in Illinois. While this suit was pending, Keveloh was still involved in lengthy divorce proceedings in Illinois, and her husband had custody of their two children, ages three and seven. She had visitation privileges but she could only visit the children in Illinois. Her driver's license was issued by Illinois and her car was registered in Illinois. She never applied for a Florida driver's license and never registered her vehicle here. She has never sought employment in Florida and she has no friends or family in Florida.
Once Keveloh came to Florida to "test" her relationship with Carter, she found out that "everything was not as it had been said." The couple had financial problems and she had to go to social services to get Shawn covered by medicaid. Keveloh also discovered drug paraphernalia in the house and Carter admitted that he had been convicted in Connecticut for child molestation. Keveloh wanted to leave immediately but according to her, Carter threatened that if she went back to Illinois, he would take Shawn and she would never see him again. She finally called the police one morning and the police made Carter leave. Keveloh then returned to Illinois. She was in Florida on this last visit only for two and one-half months (early May to mid-May of 1996).
Since Keveloh was an Illinois resident, the burden was on Carter to show that she had changed her domicile to Florida. Carter failed to carry this burden. Keveloh's visits to Florida of a few months in an "on and off" relationship with Carter is insufficient to prove a settled intention to make Florida her permanent home. See Latta (husband's visits to his wife in Florida, who lived here while commuting to college, were insufficient to evidence the husband's intent to make Florida his permanent home); McDougald (husband's continuing residence or domicile in Florida was established by fact that he left the state only to be closer to his place of work but always intended to return to this state, he retained his Florida driver's license, voter registration, and home, regularly returned to Florida where his parents lived, he continued to use the family doctor in Florida, he remarried a woman who lived in Florida and returned to Florida for the birth of their child).
REVERSED.
GRIFFIN, C.J., concurs.
HARRIS, J., concurs in result only.
NOTES
[1] Lack of subject matter jurisdiction may be raised sua sponte by an appellate court. Durie v. Hanson, 691 So.2d 485 (Fla. 5th DCA 1997); State of Florida, Department of Health and Rehabilitative Services v. Lee, 665 So.2d 304 (Fla. 1st DCA 1995), approved, 698 So.2d 1194 (Fla.1997); Datamatic Services Corp. v. Bescos, 484 So.2d 1351 (Fla. 2d DCA 1986), disapproved on other grounds, McRae v. J.D./M.D., Inc., 511 So.2d 540 (Fla.1987).
[2] Florida's Long Arm Statute is inapplicable because the child was conceived in Illinois. See § 48.193(1)(h), Fla. Stat. (1995).