861 So.2d 472 (2003)
Mark J. WEILER, Appellant,
v.
Alexandria G. WEILER, Appellee.
No. 5D03-541.
District Court of Appeal of Florida, Fifth District.
November 21, 2003.
Rehearing Denied December 30, 2003.
*474 Gregory E. Tucci, Ocala, for Appellant.
Edwin A. Green III, of Blanchard, Merriam, Adel & Kirkland, P.A., Ocala, for Appellee.
SHARP, W., J.
Mark Weiler, the husband in a dissolution case filed by Alexandria Weiler, his wife, appeals from the trial court's denial of his motion to dismiss the petition for lack of personal jurisdiction over him under the long arm statute.[1] An evidentiary hearing was held on this motion, after which the lower court ruled that Mark's contacts with Florida satisfied the requisites for personal jurisdiction. Our review of this order is de novo.[2] We reverse because we find that the evidence does not support the allegations of the petition seeking to establish personal jurisdiction over Mark.
The facts in this case are not in dispute. The parties were residents of Illinois and were married in that state. They first lived in Illinois, in a home owned by the husband. Later they moved to another Illinois residence. Thereafter, Mark's Illinois corporation, MW Asset Management, purchased investment farm property in Reddick, Florida.[3] He formed an Illinois corporation, Color Me Farm, Inc., to conduct business on the Reddick property as a horse farm. Alexandria is the president of Color Me Farm, and she supervises its day to day operations. The farm's vehicles are registered in Florida.
*475 Alexandria established she is a Florida resident. She is registered to vote in Florida, and she has a Florida driver's license. The wife testified that the parties lived together on the Florida farm from November of 1997 until May of 2001, when Mark went to Colorado. Currently, Alexandria continues to live on the farm. Currently, Mark resides in Colorado, occupying corporately-owned property, which was purchased as an investment in a 1031 exchange. He testified that all of the furnishings in the Colorado residence are owned by the corporation.
During their marriage, the parties established a mobile lifestyle. Mark traveled extensively for business reasons. Alexandria also traveled frequently, but not to the same extent. The husband testified that he travels three weeks out of every month and that in 2001, the year preceding this action, he had been in Florida, Colorado, Illinois, Wisconsin, Michigan, Indiana, Tennessee, Ohio, France and England. Alexandria's testimony indicates that for the six-month period prior to filing the petition for dissolution, she spent three to four months in Colorado and Texas.
Mark continues to own the home in Illinois, in which he allows family members to reside (i.e., Alexandria's mother and grandmother[4]). He is registered to vote in Illinois, and he has an Illinois driver's license. Mark's businesses are run by Illinois corporations. Mark testified he has always considered himself a resident of Illinois and that he never had an intent to become a Florida resident.
After the parties began living in Florida in November of 1997 on the Florida farm, they continued to file state and federal income tax returns using Illinois as their residence for the tax years 1998, 1999, 2000 and 2001. This resulted in their making large state tax payments to Illinois. Alexandria testified she executed all of these tax returns and that her signature was not forged on any of them.
In September of 2002, Alexandria filed this petition[5] for dissolution of marriage in Florida. In her petition, she alleged:
3. ResidencyLong Arm Jurisdiction. The wife has been a resident of Florida for more than six months next before the filing of this Petition. Husband and wife maintained a matrimonial domicile in the state; and the cause of action has arisen from the acts or omissions occurring in the State of Florida. (emphasis added)
At the conclusion of the evidentiary hearing on Mark's motions, the trial judge found that Alexandria was a legal resident of Florida, but it made no determination as to the husband's domicile. In denying the husband's motion to quash long-arm service of process, the trial court merely found:
[T]his Court finds by clear and convincing evidence, Marion County, Florida, is the last place these parties lived together as husband and wife with the common intent to stay married, and that Florida has jurisdiction over the divorce and over Mr. Weiler.
*476 The trial court did not state the basis for its conclusion that it had personal jurisdiction over the husband.[6]
In determining if personal jurisdiction is proper under the long-arm statute, the trial court must first determine whether the complaint alleges sufficient jurisdictional facts to bring it under the statute. Northwestern Aircraft Capital Corp. v. Stewart, 842 So.2d 190 (Fla. 5th DCA 2003). If the allegations are disputed, the court must hold, as it did in this case, an evidentiary hearing. See, OSI Industries, Inc. v. Carter, 834 So.2d 362 (Fla. 5th DCA 2003); Law Offices of Sybil Shainwald v. Barro, 817 So.2d 873 (Fla. 5th DCA 2002). A comparison of the allegations in the petition and the facts adduced at the hearing reveals that the petition is not supported by the facts.
The long-arm section 48.193(1)(e), Florida Statutes (2002) provides:
48.193 Acts subjecting person to jurisdiction of courts of state
(1) Any person, whether or not a citizen or resident of this state, who personally or through an agent does any of the acts enumerated in this subsection thereby submits himself or herself and, if he or she is a natural person, his or her personal representative to the jurisdiction of the courts of this state for any cause of action arising from the doing of any of the following acts:[7]
* * *
(e) With respect to a proceeding for alimony, child support, or division of property in connection with an action to dissolve a marriage or with respect to an independent action for support of dependents, maintaining a matrimonial domicile in this state at the time of commencement of this action or, if the defendant is a resident of this state preceding the commencement of this action, whether cohabiting during that time or not.....
The statute sets forth two ways in which a plaintiff may obtain personal jurisdiction over someone who is absent from the state in a family law context: (1) if the individual maintained a "matrimonial domicile" at the time the action was commenced, or, (2) if the defendant was a resident of this state preceding the commencement of the action whether cohabiting or not.
There is a difference between the terms "domicile" (sometimes referred to as legal, permanent or primary residence) and "residence." McCarthy v. Alexander, 786 So.2d 1284 (Fla. 2d DCA 2001). Domicile involves the intent of an individual to make Florida his or her legal residence. McCarthy. It is the place where an individual has a true, fixed and permanent home, to which he intends to return whenever he is absent. See Chisholm v. Chisholm, 98 Fla. 1196, 125 So. 694 (1929); *477 Keveloh v. Carter, 699 So.2d 285 (Fla. 5th DCA 1997); Latta v. Latta, 654 So.2d 1043 (Fla. 1st DCA 1995). A person can have only one legal residence or domicile. Keveloh.
On the other hand, a person may have several "residences." Keveloh; Walker v. Harris, 398 So.2d 955 (Fla. 4th DCA 1981). See also Wade v. Wade, 93 Fla. 1004, 113 So. 374 (1927). The difference between domicile and residence is a matter of objective fact. McCarthy.
Domicile is established when there is a good faith intention to establish a particular residence as a permanent home, coupled with the physical move to the new residence, as evidenced by positive overt acts. Keveloh. The best proof of domicile is where the individual says it is, because intent is highly significant. Keveloh. Removal from one's domiciliary jurisdiction without the intent to change one's domicile is insufficient. Keveloh. Once established domicile continues until it is superceded by a new domicile. Wade (if party is a bona fide resident of state, mere absence intending to return will not divest courts of jurisdiction); Keveloh.
The requirement in section 48.193(1)(e) that the parties maintain a "matrimonial domicile" at the time of the commencement of the action means, by definition, that their permanent place of matrimonial abode is in Florida.[8] The record in this case establishes that the parties' considered their permanent place of matrimonial abode to be Illinois through 2001, as evidenced by their state and federal income tax returns, during the period of time the wife claims Florida was their matrimonial domicile. Further, the Florida farm was just one of several corporate residences the parties used, and it was the wife's place of business as well. As noted in Farrell v. Farrell, 710 So.2d 151, 152 (Fla. 3d DCA 1998), matrimonial domicile is a place where the parties live together as husband and wife either actually or constructively. See also Forrest v. Forrest, 839 So.2d 839 (Fla. 4th DCA 2003), citing Farrell.
At some point,[9] Alexandria registered to vote in Florida and obtained a Florida driver's license. However, Mark never did so and Florida was never his domicile.[10] He continued his driver's license and voter's registration in Illinois, and continued to own the Illinois home in which family members resided.
We reject the idea that one spouse may unilaterally change the parties' matrimonial domicile simply by changing his or her driver's license and voter registration, without evidence of a corresponding mutual intent on the part of the other spouse to do so. Were we to decide otherwise, it would encourage a limited type of "forum shopping" on the part of a spouse seeking to sever his or her marriage.[11]
*478 Additionally, even if the Florida farm could have been considered the parties' marital domicile at one time, Mark was not staying or living at the Florida farm at the time of the commencement of this action, as required by section 48.193(1)(e). Alexandria testified that Mark began living in Colorado in May of 2001. Her petition was not filed until September of 2002, some sixteen months later. In the interim, the parties stayed together as husband and wife for brief periods of time in Colorado in May and the summer of 2002. Under these undisputed facts, the wife has failed to establish that the parties maintained a marital domicile in Florida at the time of the commencement of this action pursuant to section 48.193(1)(e).
Nor can personal jurisdiction over the husband be established by the alternative clause in section 48.193(1)(e), which provides for personal jurisdiction over a person who is a "resident" of this state preceding the commencement of this action, because the wife's petition failed to allege this alternative means of jurisdiction. Where a party seeks to obtain personal jurisdiction over another under the long arm statute in a dissolution of marriage action, the party must allege the requisite jurisdictional facts. McMahan v. McMahan, 826 So.2d 1024, 1025 (Fla. 3d DCA 2001). To effect service of process under the long arm statute, specific allegations demonstrating the jurisdictional facts must be alleged. McMahan.
Failure to adequately allege the relevant jurisdictional basis voids any attempted service under the long-arm statute. Id. See also Feder v. Feder, 526 So.2d 780, 781 (Fla. 3d DCA 1988); Plummer v. Hoover, 519 So.2d 1158 (Fla. 5th DCA 1988); Mouzon v. Mouzon, 458 So.2d 381, 383 (Fla. 5th DCA 1984). In this case, the wife only alleged that the parties "maintained a matrimonial domicile in the state"; there was no allegation that the husband was a resident of Florida, preceding the commencement of the action.
In any event, the facts in this case refute any possible finding of residency in Florida on Mark's part at any time close to the filing of the petition. The phrase in the statute "preceding commencement of the action" has been deemed to mean "proximately preceding the commencement of the action" (i.e., the proximity requirement). Garrett v. Garrett, 652 So.2d 378 (Fla. 1st DCA 1994), approved, 668 So.2d 991 (Fla.1996); Shammay v. Shammay, 491 So.2d 284 (Fla. 3d DCA 1986). The proximity requirement is determined in light of the totality of the circumstances. Shammay. The fact that a defendant resided in Florida at some point in time is insufficient to support jurisdiction under this clause. Garrett; Shammay. See also Squitieri v. Squitieri, 196 N.J.Super. 76, 481 A.2d 585 (1984); Bofonchik v. Smith, 622 So.2d 1355 (Fla. 1st DCA 1993)(living in Florida from 1984 to 1986 insufficient to confer personal jurisdiction).
We therefore must reverse the order and quash the service of process on the husband.
REVERSED and SERVICE QUASHED.
PETERSON and PLEUS, JJ., concur.
NOTES
[1] § 48.193(1)(e), Fla. Stat. (2002).
[2] See OSI Industries, Inc. v. Carter, 834 So.2d 362 (Fla. 5th DCA 2003).
[3] Mark owns, in his individual capacity, a vacant piece of property next to the farm.
[4] This property is a homestead under Illinois law.
[5] The wife's petition alleges that a "marital home was acquired during the marriage." She also requests exclusive use and occupancy of the marital home pendente lite and permanently, plus a special equity. These requests do not square with the record, which indicates that the only place in which the parties lived in Florida was on the farm, and that it was a business owned by an Illinois corporation.
[6] At the hearing, the trial judge stated that he was trying to separate domicile from residence, because "our statute in Florida doesn't require domicile, it requires residence." The judge also asked the attorneys to think about the possibility that Florida was not the husband's home. He observed that the lawyers were focusing on whether the husband had made Florida his domicile or primary residence. He said that Florida was clearly the wife's residence, but questioned whether there were sufficient (minimum) contacts to subject the husband to jurisdiction in Florida. Minimum contacts are not built into the long-arm statute. Venetian Salami v. J.S. Parthenais, 554 So.2d 499 (Fla.1989).
[7] Section 48.193(1) requires that the cause of action must arise from one of the enumerated statutory acts or omissions. See also, Morgan v. Morgan, 679 So.2d 342 (Fla. 2d DCA 1996); Garrett v. Garrett, 652 So.2d 378 (Fla. 1st DCA 1994), approved, 668 So.2d 991 (Fla.1996); Soule v. Rosasco-Soule, 386 So.2d 862 (Fla. 1st DCA 1980).
[8] The Legislature is presumed to know the meaning of words and rules of grammar. Florida State Racing Commission v. Bourquardez, 42 So.2d 87, 88 (Fla.1949); Campus Crusade for Christ v. Unemployment Appeals Commission, 702 So.2d 572 (Fla. 5th DCA 1997).
[9] Apparently, in 1998.
[10] Evidence of domicile includes, inter alia: income and other tax returns; homestead exemptions; voting registration; driver's license; place of business affairs; use of "residence"; and number of days in the state. Tiso, Long-Arm Jurisdiction in Support and Divorce ActionsThe Unwary Beware, 76 Fla. B.J. 91.
[11] See generally, Kinney System, Inc. v. Continental Ins. Co., 674 So.2d 86, 88 (Fla.1996), where the supreme court observed that, "[n]othing in our Constitution compels the taxpayers to spend their money ... [for] forum shopping."