# Third District Court of Appeal

## State of Florida

Opinion filed May 13, 2026.
Not final until disposition of timely filed motion for rehearing.

_____

No. 3D25-0855
Lower Tribunal No. 23-3348-CP-02
_____

**Luiza Mara Reis dos Santos Fernandes de Oliveira, et al.,**
Appellants,

vs.

**Natalia Palagi Fernandes de Oliveira, et al.,**
Appellee.

An Appeal from the Circuit Court for Miami-Dade County, Jose L. Fernandez, Judge.

James Beagle, P.A., and James W. Beagle (Fort Lauderdale); Reboa Law Firm, and Massimo Reboa (Fort Lauderdale), for appellants.

Rafaela Palagi Fernandes de Oliveira, in proper person.

Before FERNANDEZ, MILLER, and GORDO, JJ.

MILLER, J.

Appellants, the adult daughters of the decedent, challenge orders denying their collective motion to convert domiciliary probate proceedings to ancillary administration and rehearing on same and awarding litigation fees and costs in favor of appellee, the decedent's wife and personal representative of his estate.[1]  On appeal, appellants contend that the trial court's finding that the decedent was domiciled in Florida, rather than Brazil, at the time of his death fails for want of competent, substantial evidence.  Not so persuaded, we affirm.

## I

The decedent was a pilot and entrepreneur who owned a condominium unit in Coconut Grove through a single member limited liability company, Rafas, LLC, and five single-family residences in Brazil.  He had extensive business holdings in Brazil, including interests in three companies, Aviacam Gestão Empresarial, Helipalm Gestão Aeronáutica, and Renadras Distribuadora de Abrasivos Ltda., and owned four aircraft, all of which were hangered in Brazil.

---

[1] Those orders are the "Post Hearing Order on Petitioners' Motion to Convert to Ancillary Administration," "Order Denying Petition for Reconsideration or Rehearing," and "Post Hearing Order Granting Petition to Assess Litigation Fees and Costs Against Beneficial Share of Decedent's Adult Daughters."

In 2019, the decedent was granted an EB-5 visa.[2]  Later that year, he, his wife, and their two minor children were granted Permanent Resident Cards ("Green Cards").  For several years, the family resided together in Coconut Grove, and the children attended Miami schools.  During that time, the decedent traveled to Brazil extensively, overseeing his business interests.  But in January 2023, the couple returned to Brazil and enrolled their children in local schools.

On April 19, 2023, the decedent listed his Coconut Grove property for sale.  Ten days later, he executed a sales contract with a scheduled closing date.   He tragically died the next day in an amphibious aircraft crash in the Jaguari Reservoir in São Paulo, Brazil.

Appellee filed a petition for administration in Miami-Dade County, listing the decedent's last address as the Coconut Grove property and noting that the couple's minor children resided at the same address.[3]  Appellee then

---

[2] The EB-5 Program, also known as the Immigrant Investor Program, allows foreign investors to gain permanent residence in the U.S.  See Costa Invs., LLC v. Liberty Grande, LLC, 353 So. 3d 627, 630 n.1 (Fla. 4th DCA 2022) (citation omitted).

[3] Immediately after the decedent's death, appellee commenced domiciliary probate proceedings in Brazil.  In those proceedings, she listed the decedent's last address as a residence located in Igaratá, São Paulo, Brazil.

requested permission to proceed with the sale of the Coconut Grove property.

Displeased with appellee's decision to initiate probate in Florida, appellants petitioned the trial court to convert the proceedings to ancillary administration, contending the decedent was domiciled in Brazil at the time of his death. Appellee opposed the motion, citing the decedent's permanent resident status and a January 2023, forty-eight-month extension of his Permanent Resident Card.

The trial court convened a multi-day evidentiary hearing. During the hearing, appellee testified that the move to Brazil was temporary in nature, and the decedent planned to return to Florida within 180 days "to comply with the immigration[] law in the United States." She presented further evidence that the family considered moving from Coconut Grove to the greater Orlando area, consistent with the planned sale of the condominium unit, just before her husband's untimely death.

Appellants, on the other hand, contended the decedent was domiciled in Brazil from at least 2022 onward, because he consistently traveled to Brazil, overseeing his extensive business interests, returned to Brazil with his family in January 2023, enrolled his minor children in Brazilian schools, and spent only ten days of 2023 in Florida.

4

The trial court denied appellants' motion and subsequent motion for rehearing, finding they did not meet their burden of proof in establishing the decedent was domiciled in Brazil. In so doing, the court found the decedent intended to return to Florida as evidenced by the following facts: (1) the children were previously enrolled in school in Florida; (2) the family resided together for years in Coconut Grove; and (3) the Coconut Grove property had not yet been sold when the decedent passed away. This appeal ensued.

## II

### A

This appeal presents overlapping issues of fact and law. We review the trial court's factual findings for competent, substantial evidence and legal issues de novo. See Markes v. Markes, 412 So. 3d 767, 771 (Fla. 5th DCA 2025).

### B

"Residence in fact, coupled with the purpose to make the place of residence one's home, are the essential elements of domicile." State of Texas v. State of Florida, 306 U.S. 398, 424 (1939). Consistent with these elements, the Florida Probate Code defines "domicile" as "a person's usual place of dwelling" and indicates the term is "synonymous with residence."

See § 731.201(13), Fla. Stat. (2024). Section 731.201(34) defines the word "residence," in turn, as "a person's place of dwelling."

But domicile and residence are not necessarily words of equivalent meaning. A person may reside in a place without being domiciled there. To this point, a person may maintain several residences but can only have one domicile. See Weiler v. Weiler, 861 So. 2d 472, 476–77 (Fla. 5th DCA 2003); see also Meisman v. Hernandez, 353 So. 3d 669, 672–73 (Fla. 2d DCA 2022).

A domicile determination therefore requires a totality of the circumstances approach weighing a constellation of facts and evidence of intent. See Perez v. Marti, 770 So. 2d 284, 289 (Fla. 3d DCA 2000). Once domicile is established, it continues unless there is a showing of a change of residence coupled with the "'absence of any present intention of not residing permanently or indefinitely in' the new abode." Williamson v. Osenton, 232 U.S. 619, 624 (1914) (quoting A.V. Dicey, Conflict of Laws 111 (2d ed. 1908)).[4] In this vein, the "mere intention to acquire [a] new domicile without

_____

[4] See also Minick v. Minick, 149 So. 483, 487 (Fla. 1933) ("That place is properly the domicile of a person in which he has voluntarily fixed his abode, not for a mere special or temporary purpose, but with a present intention of making it his permanent home. The best definitions agree in making the elements of domicile residence and the intent to remain.") (citation omitted); Pacheco v. Jinete, 393 So. 3d 1274, 1278 (Fla. 3d DCA 2024) ("[W]here a good faith intention is coupled with an actual removal evidenced by positive

6

fact of actual removal avails nothing; neither does fact of removal without intention."  Perez, 770 So. 2d at 290.

## C

In this case, the undisputed record evidence established that the decedent was domiciled in Florida for many years.  Due to the presumption of continuing domicile, appellees bore the burden of proving that the decedent abandoned Florida and intended to remain permanently in Brazil.  See Keveloh v. Carter, 699 So. 2d 285, 288 (Fla. 5th DCA 1997) ("Once established, a domicile continues until it is superseded by a new one.  A domicile is presumed to continue, and the burden of proof ordinarily rests on the party asserting the abandonment of one domicile to demonstrate the acquisition of another.").

---

overt acts, then the change of residence is accomplished and becomes effective." (quoting Bloomfield v. City of St. Petersburg Beach, 82 So. 2d 364, 368 (Fla. 1955)); Bloomfield, 82 So. 2d at 368 ("'[D]omicile' answers very much to the common meaning of our word 'home.' Used in this connection, 'legal residence' or 'domicile' means a residence at a particular place, accompanied with positive or presumptive proof of an intention to remain there for an unlimited time.") (citation omitted); see also id. ("We hold . . . that if a man actually becomes a bona fide resident of this state and intends to remain permanently a citizen of the state, mere absence with the specific clear-cut bona fide intention of returning will not destroy the residence actually theretofore established."); Weiler, 861 So. 2d at 476 ("[Domicile] is the place where an individual has a true, fixed and permanent home, to which he intends to return whenever he is absent.").

Appellee presented competent, substantial evidence that the decedent acquired his Florida Driver's license, visa, and Green Card, complete with an extension, maintained his Florida vehicle insurance policy, placed his personal property and possessions in storage in Florida, and paid his federal income taxes as a legal resident, consistent with his stated plan to return to the state within 180 days. Under these facts, the trial court was well within its discretion in finding that appellees failed to refute the presumption of continuing domicile in Florida. See Weiler, 861 So. 2d at 477 n.10 ("Evidence of domicile includes, *inter alia*: income and other tax returns; homestead exemptions; voting registration; driver's license; place of business affairs; use of "residence"; and number of days in the state.").

To the extent that appellees contend erroneous factual findings compel a different result, we are not so persuaded. A careful reading of the order under review yields the reasonable conclusion that the trial court recited the ownership of the Florida condominium and the children's past enrollment in local schools as historical evidence of Florida domicile and then dismissed the notion the decedent intended to permanently relocate to Brazil.[5]

---

[5] The fact that appellee listed the decedent's last known address as Brazil does not control, as address does not necessarily equate to domicile.

8

Summarily rejecting the other contentions of error, we affirm in all respects.

Affirmed.